UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| MARC A. BECKER, | NO. CIV. 2:12-1742 WBS EFB |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, FEDERAL NATIONAL MORTGAGE ASSOCIATION, and DOES 1-10, | |
| Defendants. | |

----oo0oo----

Plaintiff Marc A. Becker filed suit against defendants Wells Fargo Bank, National Association ("Wells Fargo") and Federal National Mortgage Association ("FNMA") in state court, asserting claims arising from defendants' allegedly wrongful conduct related to a residential loan.  Defendants then removed the proceeding to this court on the basis of diversity jurisdiction. (Docket No. 1.) Currently before the court is defendants' motion to dismiss the Complaint in its entirety for

1

failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket No. 6.)

I.   Factual and Procedural Background

Plaintiff purchased the property at 2217 Quarry Way in Rocklin, California ("Quarry Way property") in 2003.  (Notice of Removal Ex. C ("Compl.") ¶¶ 7-8 (Docket No. 1).)  In 2005, plaintiff refinanced the Quarry Way property with the Union Federal Bank of Indianapolis ("UFB").  (Id. ¶ 9.)

Four years later, in 2009, plaintiff alleges that he fell behind on his mortgage payments and sought modification.  (Id. ¶ 10.)  In June 2009, NDEx West, LLC ("NDEx") recorded a Notice of Default.  (Compl. ¶ 11; Defs.' Req. for Judicial Notice ("RJN") Ex. 4 (Docket No. 8).)  That same month, an Assignment of Deed of Trust was recorded that transferred the Deed of Trust from UFB to Wells Fargo.  (Compl. ¶ 12; RJN Ex. 5.)  In July, Wells Fargo recorded a Substitution of Trustee that substituted NDEx as trustee.  (Compl. ¶ 13; RJN Ex. 6.)

A Notice of Trustee's Sale was recorded on September 14, 2009, listing September 30, 2009, as the sale date.  (Compl. ¶ 14; RJN Ex. 7.)  The sale did not occur on the scheduled date, and for the next eighteen months plaintiff allegedly endeavored to obtain a loan modification.  (Id. ¶ 15.)  His request for a modification was ultimately rejected in April of 2011.  (Id.)

According to plaintiff, when Wells Fargo denied him a loan modification, it "agreed to allow Plaintiff to pursue a short sale" of the Quarry Way property.  (Id.)  Plaintiff alleges that he contracted with a short sale buyer and that "Wells Fargo

2

approved the short sale so long as the price was increased" by twenty-eight thousand dollars.  (Id. ¶ 16.)

According to plaintiff, although he was able to convince the short sale buyer to agree to the higher price, Wells Fargo did not postpone the foreclosure sale date for his property and the property was sold at a trustee's sale on October 17, 2011.  (Compl. ¶¶ 17-18; RJN Ex. 12.)  As a result, the short sale did not occur.  (Compl. ¶¶ 17-18, 26.)

Plaintiff alleges that there were irregularities regarding the identity of the purchaser at the trustee's sale in that it is not clear if the purchasing "beneficiary" was Wells Fargo or FNMA.  (Id. ¶¶ 18-19.)  Specifically, plaintiff alleges that no assignment from Wells Fargo to FNMA was recorded.  (Id. ¶ 19; but see RJN Ex. 8 (recorded Assignment of Deed of Trust transferring interest from Wells Fargo to FNMA)).

Plaintiff has filed several bankruptcy petitions, the most recent of which is a Chapter 13 petition filed July 8, 2011.  (See RJN Exs. 17-21.)  Having consulted the electronic docket for that proceeding, it appears to the court that that proceeding is ongoing.

Plaintiff brings claims for (1) declaratory judgment, (2) specific performance, (3) intentional interference with prospective advantage, (4) breach of the implied covenant of good faith and fair dealing, and (5) exemplary damages.  (Docket No. 1, Ex. C.)  Only the first claim is brought against all defendants; the three remaining claims are brought against Wells Fargo only.  Defendants now move to dismiss all claims for failure to state a claim under Rule 12(b)(6).  (Docket No. 6.)

3

II.   Request for Judicial Notice

In general, a court may not consider items outside the pleadings when deciding a motion to dismiss, but it may consider items of which it can take judicial notice. <u>Barron v. Reich</u>, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Judicial notice may properly be taken of matters of public record outside the pleadings. <u>See</u> <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986).

Defendants request that the court judicially notice several recorded documents pertaining to the Quarry Way property. (<u>See</u> RJN Exs. 2, 4-9, 12, 14-16.) The court will take judicial notice of these documents, since they are matters of public record whose accuracy cannot be questioned. <u>See</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001).

Defendants also request that the court judicially notice the Chapter 13 bankruptcy petition filed by plaintiff, as well as several electronic dockets associated with plaintiff's various bankruptcy filings. (RJN Exs. 17-21.) As these documents are public records capable of accurate and ready determination, they will be judicially noticed as well. <u>See</u> <u>Coward v. JP Morgan Chase Bank, Nat'l Ass'n</u>, No. 2:11-3378, 2012 WL 2263359, at *3 n.1 (E.D. Cal. June 15, 2012) (judicially

4

noticing bankruptcy petition).

The remaining documents that defendants submit are items filed in the underlying state court action and in plaintiff's bankruptcy proceedings. (RJN Exs. 1, 3, 10-11, 13, 22-25.) Judicial notice may properly be taken of proceedings from other cases. See Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n. 2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (quoting U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992)) (internal quotation marks omitted). The court will grant defendants' request, but the court takes judicial notice of the fact of the proceedings only and not of any facts contained within the documents. See Lee, 250 F.3d at 690.

III. Discussion

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). In deciding whether a plaintiff has stated a claim, the court must accept the allegations in the complaint as true and draw all reasonable

inferences in favor of the plaintiff.  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds by</u> <u>Davis v. Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972).

    A.   <u>Standing</u>

        Defendants argue that plaintiff may not independently pursue his causes of action while his bankruptcy petition is pending because the claims in this action are properly considered the property of the bankruptcy estate.  Because plaintiff no longer has possession of claims, defendants reason that he has no standing to bring them.  Instead, any such claims would have to be brought by the bankruptcy trustee.  The case that defendants cite in support of this proposition, <u>Bistabuab v. Liberty Savs. Bank</u>, 52 Cal. App. 4th 1075 (2d Dist. 1997), however, involved a Chapter 7 debtor whereas plaintiff filed for bankruptcy under Chapter 13.

        Unlike Chapter 7, Chapter 13 grants the debtor possession of the bankruptcy estate's property.  11 U.S.C. § 1306(b).  The Seventh Circuit relied on this distinction in holding that Chapter 13 debtors, unlike Chapter 7 debtors, may bring claims in their own name.  <u>Cable v. Ivy Tech State College</u>, 200 F.3d 467, 472-74 (7th Cir. 1999); <u>see also</u> Fed. R. Bankr. P. 6009 ("[D]ebtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal."); <u>Kelsey v. Waste Mgmt. of Alameda Cnty.</u>, 76 Cal. App. 4th 590, 595 (1st Dist. 1999) (finding that Chapter 13 debtor had standing to bring

6

1 claims that were a part of the bankruptcy estate). Assuming that
2 all of plaintiff's claims are properly considered a part of his
3 bankruptcy estate, as a Chapter 13 debtor plaintiff retains
4 possession of the claims at issue here and thus his Chapter 13
5 bankruptcy does not deprive him of standing.

      B.    <u>Declaratory Relief</u>

7       In his request for declaratory relief, plaintiff asks
8 the court to declare that the foreclosure sale of the Quarry Way
9 property was invalid. In his opposition, plaintiff offers three
10 reasons why the sale was defective: (1) NDEx improperly recorded
11 the Notice of Default because it was a "stranger to the
12 transaction," (2) Wells Fargo was not a beneficiary until after
13 the Notice of Default was recorded, and so could not direct NDEx
14 or any one else to record a notice of default, and (3) the
15 foreclosure sale was improper because there is no evidence that
16 the Note was ever assigned to FNMA along with the Deed of Trust.
17 (Pl.'s Opp'n at 6:4-7:3 (Docket No. 9).)

18       None of these allegations, however, are found in the
19 Complaint. In the Complaint, plaintiff alleges only that there
20 were defects in the foreclosure sale because there may not have
21 been an Assignment of Deed of Trust transferring interest to FNMA
22 from Wells Fargo. The publicly recorded Assignment submitted by
23 defendants, (RJN Ex. 8), shows that such an assignment occurred,
24 a fact that plaintiff appears to admit in his opposition.

25       Even if the court were to consider the new arguments
26 raised in plaintiff's opposition, plaintiff's allegations would
27 still fall short. Plaintiff's arguments regarding the Notice of
28 Default are unpersuasive because the Notice states that NDEx

7

1  acted as the "original Trustee, duly appointed Substituted
2  Trustee, or acting as Agent for the Trustee or Beneficiary," (RJN
3  Ex. 4), and he does not allege or argue that NDEx was not
4  properly acting as an agent.  With respect to his arguments
5  regarding the separation of the Note and the Deed, the Assignment
6  of Deed of Trust states that it transfers interest in the Deed as
7  well as "the note or notes therein described or referred to."
8  (RJN Ex. 8.)

         Because the allegations in the Complaint regarding the invalidity of the foreclosure sale are insufficient, the court will grant defendants' motion to dismiss this claim.

    C.    <u>Specific Performance</u>

         Plaintiff requests that the court enter a decree ordering Wells Fargo to transfer the Quarry Way property to plaintiff's short sale buyer.  Specific performance is a remedy available on a claim for breach of contract, not a claim in its own right.  <u>Eugene N. Gordon, Inc. v. La-Z-Boy, Inc.</u>, No. 2:06-2353, 2007 WL 1101456, at *4 (E.D. Cal. Apr. 12, 2007) (citing <u>Wilkison v. Wiederkehr</u>, 101 Cal. App. 4th 822, 833 (2d Dist. 2002); <u>Petersen v. Hartell</u>, 40 Cal. 3d 102, 110 (1985)).  It is a remedy that is only available where there is no adequate remedy at law.  <u>Id.</u>

         Plaintiff has not brought a breach of contract claim or even plausibly alleged that plaintiff and Wells Fargo entered into a contract to see that the short sale occurred.  Accordingly, the court will dismiss plaintiff's claim for specific performance.

    D.    <u>Intentional Interference with Prospective Advantage</u>

8

1            Under California law, there are five elements of the
2 tort of intentional interference with prospective economic
3 advantage: "(1) an economic relationship between plaintiff and a
4 third party, with the probability of future economic benefit to
5 the plaintiff; (2) defendant's knowledge of the relationship; (3)
6 an intentional act by the defendant, designed to disrupt the
7 relationship; (4) actual disruption of the relationship; and (5)
8 economic harm to the plaintiff proximately caused by the
9 defendant's wrongful act, including an intentional act by the
10 defendant that is designed to disrupt the relationship between
11 the plaintiff and a third party." Edwards v. Arthur Andersen
12 LLP, 44 Cal. 4th 937, 944 (2008). "The plaintiff must also prove
13 that the interference was wrongful, independent of its
14 interfering character," which means that the interference must be
15 proscribed by "'some constitutional, statutory, regulatory,
16 common law, or other determinable legal standard.'" Id. (citing
17 Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376,
18 392-93 (1995) and quoting Korea Supply Co. v. Lockheed Martin
19 Corp., 29 Cal. 4th 1134, 1153-54 (2003)).

20           Plaintiff's claim is based upon Wells Fargo's alleged
21 interference with the short sale that plaintiff hoped to carry
22 out.  According to plaintiff, Wells Fargo's interfered with his
23 economic relationship with the would-be short sale buyer by
24 failing to postpone the foreclosure sale, a step that plaintiff
25 alleges would have allowed the short sale to occur.  (Compl. ¶¶
26 25-26.)  Even assuming that all the other necessary elements are
27 met, plaintiff's allegations include no suggestion that Wells
28 Fargo's actions violated any law or other determinable legal

standard.  Accordingly, the court will grant defendants' motion to dismiss plaintiff's third claim.

     E.    <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Plaintiff's fourth claim is also based upon Wells Fargo's alleged role in preventing the short sale from occurring. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." <u>Marsu, B.V. v. Walt Disney Co.</u>, 185 F.3d 932, 937 (9th Cir. 1999) (quoting <u>Carma Developers, Inc. v. Marathon Dev. Cal., Inc.</u>, 2 Cal. 4th 342, 371 (1992)).  "A typical formulation of the burden imposed by the implied covenant of good faith and fair dealing is "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." <u>Andrews v. Mobile Aire Estates</u>, 125 Cal. App. 4th 578, 589 (2005) (quoting <u>Gruenberg v. Aetna Ins. Co.</u>, 9 Cal. 3d 566, 573 (1973)) (internal quotation marks omitted.

It is not entirely clear in what contract plaintiff locates the duty of good faith and fair dealing that Wells Fargo allegedly owed him, but in any case there are no allegations suggesting that under the terms of any contract a short sale was a benefit to which plaintiff was entitled.  In the absence of any such allegation, plaintiff cannot maintain a claim for breach of the implied covenant based on Wells Fargo's alleged role in preventing the short sale.  Accordingly, the court will dismiss this claim.

IT IS THEREFORE ORDERED that defendants' motion to dismiss be, and the same hereby is, GRANTED.

Plaintiff has twenty days from the date of this Order to file an amended complaint, if he can do so consistent with this Order.

DATED:     August 9, 2012

*[signature: William B. Shubb]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE